UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MACCO PROPERTIES, INC., | ) | Case No. 10-16682-R |
| | ) | Chapter 7 |
| | ) | |
| NV BROOKS APARTMENTS, LLC, | ) | Case No. 10-16503-R |
| | ) | Chapter 7 |
| Debtors. | ) | (Jointly Administered) |

| | | |
|---|---|---|
| MICHAEL E. DEEBA, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 12-1139-R |
| | ) | |
| THE CORPORATE GROUP, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| COBBLESTONE APARTMENTS | ) | |
| OF TULSA, LLC; LARRY D. AND | ) | |
| JEANETTE A. JAMISON FAMILY | ) | |
| TRUST; AND JACKIE L. HILL, JR., | ) | |
| | ) | |
| Intervenors. | ) | |

## ORDER DENYING MOTION TO ENFORCE
## AGREEMENT TO DISMISS ADVERSARY PROCEEDING

Before the Court is the Motion to Enforce Agreement to Dismiss Adversary Proceeding (Doc. 66) filed by Lew S. McGinnis ("McGinnis") as corporate representative of Defendant The Corporate Group, LLC ("Corporate Group") on March 26, 2015 ("Motion to Enforce"); the Trustee's Response and Objection to Motion to Enforce Agreement to Dismiss Adversary Proceeding (Doc. 67) filed by Michael E. Deeba, Chapter 7 Trustee

("Trustee") on April 9, 2015 ("Trustee's Response"); the Objection of Cobblestone and Hill to Motions to Enforce Agreement to Dismiss Adversary Proceedings (Docs. 69 and 70 and Main Case Docs. 2388 and 2389)[1] filed by Cobblestone Apartments of Tulsa, LLC and the Larry D. and Jeannette A. Jamison Family Trust (collectively, "Cobblestone") and Jackie L. Hill, Jr. ("Hill") on April 9, 2015 (the "Objection"); and the Omnibus Response of United States Trustee to Motion to Enforce Agreement to Dismiss Adversary Proceeding (Main Case Doc. 2387) filed by the United States Trustee ("UST") on April 9, 2015 ("Omnibus Response").[2]  McGinnis filed a Joint Reply to Responses and Objections to Motion to Enforce Agreement to Dismiss Adversary Proceeding (Doc. 76) out of time and without leave on May 21, 2015.[3]

---

[1] Hill and Cobblestone each filed a copy of the joint objection in the Adversary Proceeding and in the Main Case.

[2] The UST also filed the response in the adversary proceeding (Doc. 68).

[3] On April 21, 2015, McGinnis filed a request for leave to file a reply to the Objection and responses to the Motion to Enforce, to which he attached as an exhibit his proposed reply.  Doc. 71.  The Court granted McGinnis leave – and set a deadline of April 27, 2015 – to file the proposed reply.  As of May 15, 2015, McGinnis had not filed the reply.  On May 15, 2015, Cobblestone and Hill filed a motion to strike the proposed reply attached to the request for leave, to the extent that the Court might consider the contents thereof, because among other things, the proposed reply improperly contained a request for affirmative relief against Cobblestone and Hill (Doc. 75).  On May 21, 2015, without requesting leave, McGinnis filed the proposed reply out of time (Doc. 76) ("Reply").  On May 22, 2015, he filed a response to the motion to strike the reply (Doc. 77).

In the interest of judicial economy, the Court ***denies*** Cobblestone and Hill's motion to strike the proposed reply and *sua sponte* grants McGinnis leave to file the Reply out of time.  To the extent McGinnis requests affirmative relief in the Reply, it is denied as procedurally improper.

2

## I.  JURISDICTION

This is partially a "core" proceeding as described by 28 U.S.C. § 157(b)(2)(A), (E), (H), and (O) and partially a related "non-core" proceeding.[4]  The Court has jurisdiction of this proceeding by virtue of 28 U.S.C. §§ 157, 1334, and Local Civil Rule 81.4(a) of the United States District Court for the Western District of Oklahoma.

## II.  FINDINGS OF FACT

On November 1, 2012, Trustee filed a Complaint against Corporate Group to collect alleged pre-petition loans made by the debtor to Corporate Group and to recover alleged unauthorized post-petition transfers to Corporate Group, or in the alternative, to avoid the transactions, which total $3,619,508.44, as alleged fraudulent transfers.

McGinnis's Motion to Enforce requests that the Court enforce an agreement announced in resolution of matters set for hearing on December 3, 2013 in the main bankruptcy case, namely the UST's motion to convert the main bankruptcy case from Chapter 11 to Chapter 7, and McGinnis's competing motion seeking dismissal of the bankruptcy case (the "Conversion Hearing").  At the Conversion Hearing, McGinnis consented to the conversion of the bankruptcy case, and various parties (Trustee, Jennifer Price ("Price"), McGinnis, the UST, and the unsecured creditors committee ("Committee")) settled and compromised various matters that were not directly at issue at the Conversion Hearing.  The

---

[4]The Court is aware that Corporate Group has filed a motion requesting the District Court to withdraw its automatic reference of this proceeding to this Court because it does not consent to this Court conducting a jury trial or entering a final order on certain of Trustee's claims.  Trustee has conceded that Corporate Group is entitled to a jury trial on at least one of the claims and that the claim is outside this Court's jurisdiction to enter a final order.  The distinction is not relevant to determination of the Motion to Enforce, however, because the resolution of the motion does not dispose of the case or result in a final order.

terms of the comprehensive settlement were recited into the record by counsel for McGinnis. One term of the settlement was an agreement between the parties that this and certain other adversary proceedings would be dismissed with prejudice upon a joint motion of the parties involved.

On December 16, 2013, an Agreed Order was entered converting the case and reducing the parties' oral agreements to writing.[5] The order stated in pertinent part:

> (1) Upon conversion, Motions will be filed, *with Notice of Opportunity for Hearing*, requesting dismissal with prejudice, based on the execution of the Mutual Releases and the language therein, as described in paragraph (2) below, the following adversary proceedings . . . (f) Michael E. Deeba v. The Corporate Group, LLC, Adversary No. 12-01139[.]
>
> *****
>
> (2) Contemporaneously with the dismissal of the above referenced adversary proceedings, the parties, Michael E. Deeba, Trustee and Lew S. McGinnis and Jennifer Price, will exchange mutual releases in the form of Mutual Releases used previously in this case, which provides for the release of all claims between the parties, except any claims for gross negligence or wilful misconduct, as more fully described in the Mutual Releases.[6]

On March 28, 2014, Trustee and Corporate Group filed a Joint Motion for Dismissal with Prejudice and Notice of Opportunity for Hearing (Doc. 39) ("Joint Motion"). The Joint Motion drew objections from the UST (Doc. 40), Cobblestone (Doc. 43), and Hill (Doc. 44).

On January 22, 2015, this proceeding was assigned to the undersigned judge, and a status conference was held on February 6, 2015. Thereafter Cobblestone and Hill were

---

[5]McGinnis and his counsel refused to approve the proposed Agreed Order submitted to Judge Jackson for entry, but Judge Jackson noted on the Agreed Order that the document accurately reflected the agreement recited in open court by McGinnis's counsel at the hearing on December 3, 2013.

[6]Agreed Order (Main Case Doc. 1909) at 2-3 (emphasis added).

4

granted leave to intervene in this proceeding for the limited purpose of opposing the Joint Motion. On March 26, 2015, McGinnis filed the Motion to Enforce. The Trustee's Response and the Cobblestone/Hill Objection were both filed on April 9, 2015.[7]

The UST has not intervened in this proceeding, but filed the Omnibus Response in the main bankruptcy case, also on April 9, 2015. The UST argues that the agreement that McGinnis seeks to enforce was and is subject to giving notice of the opportunity to object to the agreement to all parties in interest in the bankruptcy case (see Bankruptcy Rule 2002(a)(3)), and obtaining Court approval under Bankruptcy Rule 9019.[8]

At the time of the Conversion Hearing, all parties, including McGinnis, acknowledged that the estate contained liquid assets of approximately $1.5 million, that unsecured creditors claims totaled approximately $650,000.00, and that after payment of administrative expenses, there was strong probability that a significant sum would be returned to the equity holder

---

[7]McGinnis contends that Cobblestone and Hill are estopped from objecting to the Motion to Enforce because they participated in the Conversion Hearing and had the opportunity to object to the agreement at that time. Hill is an unsecured creditor holding a claim in the original amount of $780.00, and Cobblestone is an unsecured creditor holding a claim in the original amount of $400,000.00. Hill attended the hearing as a member of the creditors committee. Although counsel for the Committee signed the Agreed Order, neither Hill nor Cobblestone did. The Committee was dissolved upon conversion as a matter of law.

[8]McGinnis argues that the UST lacks standing to oppose his Motion to Enforce because the UST "is not an actual party and has not intervened." Reply at 1. Under Section 307 of the Bankruptcy Code, however, the UST "may raise and may appear and be heard on any issue in any case or *proceeding* under this title." The UST's Omnibus Response, filed in the main bankruptcy case, appropriately raised the issue that the compromise of this and other adversary proceedings are not enforceable absent a hearing under Rule 9019 and Court approval. Even in the absence of the UST's Omnibus Response, however, the Court would independently conclude that any agreement to dismiss an adversary proceeding seeking to collect a debt in excess of $3.5 million requires Court approval after notice under Rules 9019 and 2002(a)(3).

5

(McGinnis's wife, Price). McGinnis's counsel stated that the parties' desire "obviously, is not to see the balance of the funds that remain [be] eroded, because, essentially, equity would be entitled right now if the case were dismissed and claims paid[,] to some sort of distribution."[9] Although McGinnis requested that the bankruptcy case be dismissed, his counsel acknowledged that "conversion . . . does, in the big scheme of the bankruptcy world, make sense because there are things that still need to be done in these cases."[10]

The Committee, Trustee, and the UST were amenable to dismissing the adversary proceedings only because it appeared that all claims, including outstanding administrative expenses, would soon be *fully paid* from the cash on hand, making it unnecessary to recover funds from McGinnis, Price, and their related entities, including Corporate Group, to complete the administration of the estate. Claims for unpaid administrative expenses that were timely filed in the Chapter 11 case totaled approximately $250,000.00.[11] Thus, as of the date of the Conversion Hearing, the anticipated surplus of approximately $600,000.00 justified the parties' agreement to dismiss the adversary proceedings.

---

[9] Transcript of 12/3/13 Hearing at 4-5.

[10] Id. at 6.

[11] According to the estate professionals' timely filed applications for compensation and reimbursement of expenses, the following amounts were unpaid as of the conversion date:
- Michael Deeba, Chapter 11 Trustee: $623,068.36, voluntarily reduced to $82,145.74
- Bellingham & Loyd, counsel to the Chapter 11 Trustee ("Counsel"): $78,633.85
- MED PLLC, financial advisor to the Chapter 11 Trustee ("MED PLLC"): $11,925.47
- Kevin Coffey, counsel for NV Brooks Apartments, LLC: $17,031.20
- Ruston Welsh, counsel to Committee: $34,685.24
- Pierce Couch, special counsel to Chapter 11 Trustee: $24,595.60

In addition, because McGinnis and Price agreed to execute releases of Trustee and his agents, the parties justifiably, but wrongly, assumed McGinnis and Price were agreeing to forego their threatened lawsuits against Trustee and his professionals in order to move the case toward a speedy and efficient closure.  By mid-January 2014, however, Price had already commenced post-conversion litigation against Trustee and his professionals by asserting affirmative claims in objections to their fee applications.  This was followed by an unauthorized lawsuit filed by McGinnis and Price against Trustee and Counsel in the United States District Court, a lawsuit against Trustee's management professionals, and significant ancillary litigation against Trustee in the bankruptcy court.  McGinnis and Price's actions quickly "eroded" the equity by forcing the estate to incur substantial additional administrative expenses.

After a full year of intense and costly litigation and a full trial on the merits, judgments were entered against Price and McGinnis on all claims against Trustee and his professionals.  It is now likely that the full payment unsecured creditors anticipated in December 2013 depends upon the estate pursuing and prevailing on some or all of the claims asserted against McGinnis, Price, and their related entities, including Corporate Group.

### III.   CONCLUSIONS OF LAW

Bankruptcy Rule 9019(a) provides –

> On motion by the trustee and *after notice and a hearing*, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.[12]

---

[12] Fed. R. Bankr. P. 9019(a) (emphasis added).

The purpose of Rule 9019(a) is to ensure that creditors and other interested parties have the opportunity to object to a compromise, settlement, or stipulation that may unfairly or adversely affect their interests. A settlement that has not been approved by the Court after notice to all interested parties is unenforceable.[13] Regardless of the desires of the settling parties, the Court has an independent duty to objectively evaluate the developed facts of the dispute, and determine whether a settlement by a trustee that affects property of the estate is fair, equitable, and in the best interests of the estate. Courts are directed to consider (1) the probability of success on the merits; (2) the collectability of a possible judgment; (3) the expense and complexity of the litigation; and (4) the interests of creditors "in deference to their reasonable views."[14]

The Agreed Order provided that this proceeding would be dismissed only after notice of an opportunity to be heard was given to parties in interest. Trustee performed his part of the agreement and complied with the Agreed Order by filing the Joint Motion which gave notice of the proposed dismissal.[15] The Joint Motion drew three objections which have not

---

[13] In re Git-N-Go, Inc., 322 B.R. 164, 174 (Bankr. N.D. Okla. 2004), *citing* Travelers Ins. Co. v. American AgCredit Corp. (In re Blehm Land & Cattle Co.), 859 F.2d 137, 141 (10th Cir. 1988).

[14] In re Kopexa Realty Venture Co., 213 B.R. 1020, 1022 (B.A.P. 10th Cir. 1997). McGinnis contends that the agreement did not require notice under Rule 9019 or a motion to approve the agreement because "[n]o party in interest objected to the entry of the December 16, 2013 Order thus it became final including all of its terms." Reply at 3. Parties in interest were not given notice the terms of the Agreed Order before it was entered, however, and thus were deprived of any meaningful opportunity to object to its terms.

[15] See, e.g., In re Martin, 91 F.3d 389 (3d Cir. 1996) (Trustee did not act in bad faith or breach an agreement to dismiss a state court action when she did not advocate for approval of the agreement at the hearing on her Rule 9019 motion; intervening events proved the agreement to be not in the best interests of the estate and trustee had a duty to the estate to advise the court accordingly).

8

yet been heard.  Implicit in giving notice is that any party adversely affected will have the opportunity to argue that a compromise or settlement is not fair, equitable or in the best interests of the estate.  Accordingly, the agreement to dismiss the proceeding cannot be enforced because the Court must conduct a hearing in order to evaluate the agreement under the standards set forth above.  The Motion to Enforce is therefore *denied* as premature.

**SO ORDERED** this 13th day of October, 2015.

DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE